IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-03462-CNS-MDB

SALVADOR CERVANTES and SHAWN RENTIE,
individually and on behalf of all similarly situated persons,

Plaintiffs,

v.

WENDY'S OF COLORADO SPRINGS, INC.,

Defendant.

---

**ORDER**

---

Before the Court is Plaintiffs' fully briefed Renewed Motion for Class Certification. *See* ECF Nos. 62–64. For the reasons set forth below, the Court DENIES Plaintiffs' certification motion. In doing so, the Court presumes familiarity with this case's factual and procedural background, as well as the legal standards governing the Court's analysis. *See, e.g.,* Fed. R. Civ. P. 23; *White v. Gen. Motors LLC*, No. 1:21–cv–00410–CNS–MEH, 2023 WL 3278460, at *2–3 (D. Colo. May 5, 2023) (explaining class action is "an exceptional procedural mechanism" and Rule 23 requirements that plaintiffs must satisfy to meet their *certification* burden).

**I. ANALYSIS**

The Court has carefully reviewed the parties' certification briefs. At bottom, the parties' dispute whether Plaintiffs have met their class certification burdens. *Compare*

*generally* ECF No. 62, *with* ECF No. 63. The Court agrees with Defendant that Plaintiffs have not met their Rule 23(b)(3) *predominance* burden. Because Plaintiffs have failed to do so, the Court need not analyze the remaining Rule 23(a) and Rule 23(b) requirements and the parties' arguments that attend them. *See, e.g., Ruiz v. U.S. Bank Nat'l Ass'n*, No. 18–cv–03200–DDD–KLM, 2020 WL 5517113, at *4 n.1 (D. Colo. July 24, 2020); *Lindsay v. Cutters Wireline Serv., Inc*., No. 17–cv–01445–PAB–SKC, 2021 WL 1172650, at *2 (D. Colo. Mar. 29, 2021); *Tabor v. Hilti, Inc*., 703 F.3d 1206, 1229–30 (10th Cir. 2013) ("In addition to meeting *all* Rule 23(a) requirements, to certify a class [plaintiffs] must satisfy *at least one subsection* of Rule 23(b). (citation modified)).[*]

**A. Legal Standard for Predominance**

Under Rule 23(b)(3), a plaintiff must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Although similar to its Rule 23(a)(2) commonality counterpart, a court's predominance inquiry under Rule 23(b)(3) is "even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citation omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

[*] The parties advance their arguments under Colorado law. *See, e.g.,* ECF No. 62 at 8 (citing C.R.C.P. 23(a) and C.R.C.P. 23(b)(3)). Federal Rule of Civil Procedure 23 applies in federal court and governs the Court's analysis. *See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400 (2010). Regardless, the requirements under C.R.C.P. 23(a) and C.R.C.P. 23(b)(3) are virtually identical to those set forth in Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3). *See, e.g., Breaux v. Am. Fam. Mut. Ins. Co*., Civil Action No. CV 04 N 191, 2005 WL 8159284, at *4 (D. Colo. Mar. 23, 2005) ("The language of Colorado's Rule 23 and Federal Rule of Civil Procedure 23 are, for all pertinent purposes, identical . . . . Thus, the differences between state and federal law are virtually nonexistent."). Accordingly, the Court may analyze Plaintiffs' arguments notwithstanding their application of Colorado, rather than federal, law in their certification motion. The Court applies federal decisional law in explaining and applying Rule 23(a) and Rule 23(b)(3)'s requirements. *See Breaux*, 2005 WL 8159284, at *4. Further, the Court has considered Plaintiffs' Unopposed Motion to Modify Proposed Class Definition, ECF No. 66, which the Court previously granted, ECF No. 67.

cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation modified). In conducting this inquiry, courts must give "careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *see also Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) ("To satisfy Rule 23(b)(3), a plaintiff must show that common questions subject to generalized, classwide proof predominate over individual questions." (citation modified)). An "individual question" is one where "members of a proposed class will need to present evidence that varies from member to member," whereas a "common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (citation modified). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id*. at 453 (citation modified); *see also Naylor Farms*, 923 F.3d at 789.

Courts, engaging in their predominance inquiries, take a two-step approach. *See, e.g., CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). First, courts must "characterize the issues in the case as common or not." *Id*. Then, courts "weigh which issues predominate." *Id*.; *see also* 2 Newberg and Rubenstein on Class Actions § 4:50 (6th ed.) ("The predominance analysis logically entails two steps—the characterization step and the weighing step."). "Once the issues have been characterized,

courts then loosely compare the issues subject to common proof against the issues subject solely to individualized proof to assess whether the common issues predominate." *Id.*; *see also Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 168 (D.N.M. 2016) (stating that courts "compar[e] the total time [they] will most likely spend on common versus individual questions." (citations omitted)). This inquiry begins with "the elements of the underlying cause of action." *CGC Holding*, 773 F.3d at 1088 (citation modified); *cf. Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citations omitted)). Where a plaintiff demonstrates that, after engaging in this two-step approach, common, "aggregation-enabling" issues in the case "are more prevalent or more important than individual issues," then Rule 23(b)(3)'s predominance requirement is satisfied. *Tyson Foods*, 577 U.S. at 453 (citation modified).

**B. Predominance Discussion**

***First***, the Court agrees with Plaintiffs that they have put forward a common issue: Whether Defendant violated Colorado law by failing to pay putative class members under the rest break policy for any missed breaks. *See, e.g.,* ECF No. 62 at 9 ("Here, Plaintiffs and the Class Members worked under an identical break policy. Plaintiffs and the Class share the common claims that this policy was illegal and that they missed breaks."); *id.* at 13 ("Defendant's employees worked under an identical rest break policy, which allowed employees to miss their breaks . . . . Plaintiffs' class claims include the question of whether Defendant's policy complied with Colorado law." (citation modified)).

***Second***, the Court disagrees with Plaintiffs that even given this "common issue," *id.*, that it outweighs and predominates over "individual issues," *Tyson Foods*, 577 U.S. at 453; *CGC*, 773 F.3d at 1087. To establish their claims, Plaintiffs must show that they and any putative class members were prohibited from taking rest breaks. *See Ruiz*, 2020 WL 5517113, at *3 (D. Colo. July 24, 2020) ("For a failure to give rest breaks, this means [plaintiff] must establish that she wasn't permitted to take rest breaks for any period of four or more hours of work."); *Pilmenstein v. Devereux Cleo Wallace*, 492 P.3d 1059, 1066 (Colo. App. 2021) (holding that Colorado law "authorizes a private right of action for rest period violations where the employee seeks to recover the minimum wage for the time she was entitled to receive, but the employer did not provide, a rest period"). And Plaintiffs argue that that "the number of these missed breaks—as well as any resulting damages—can be mathematically calculated from computerized payroll records and representative evidence." ECF No. 62 at 9. *See also id.* at 13 ("Defendant's detailed time-keeping records along with representative evidence can be used to quantify missed breaks.").

However, Defendant observes that their employees were "'on the clock' any time they took a rest break." ECF No. 63 at 15. In other words, any time sheets or computerized payroll records are not probative of whether any employee took or was denied a break. *See id.* at 16 ("Because Defendant does not require employees to clock out for rest breaks, Plaintiffs are mistaken in their claim that the timesheets are probative of whether rest breaks were missed."). Plaintiffs acknowledge this flaw in their own motion: "Defendant does not track the actual occurrence of breaks . . . which somewhat

complicates the determination of how many breaks actually were missed by Class Members." ECF No. 62 at 14. *See also id.* at 15 ("Therefore, even if Defendant's records are insufficient to track whether any given break occurred, that does not preclude certification.").

Against materially similar factual backgrounds, numerous courts have denied certification on *predominance* grounds. As explained in *Ruiz*, it would be one thing if Defendant "had a policy *prohibiting* its Colorado employees from taking breaks," as in that circumstance "common questions [and] the predominance inquiry might weigh in favor of certification depending on whether a common method of proof was availabile to discern damages." 2020 WL 5517113, at *3. Plaintiffs' case is like *Ruiz*, insofar as that due to the nature of Defendants' records and time sheets—and the fact that, as Plaintiffs acknowledge, they were not categorically prohibited from taking breaks—Plaintiffs and class members "would have to present individualized evidence regarding how often and for what shifts [a plaintiff] wasn't permitted to take a break—if at all." *Id. See also* ECF No. 62 at 4 (arguing that Defendant's "uniform break policy" was illegal because it "did not *ensure* that employees received breaks" and that "Plaintiffs challenge Defendant's admitted policy of placing the onus on [employees] to take their breaks rather than ensuring that, in fact, such breaks were taken" (emphasis added)); *Vasquez v. First Student, Inc.*, No. 2:14–CV–06760–ODW(Ex), 2015 WL 1125643, at *9 (C.D. Cal. Mar. 12, 2015) (finding in Rule 23(b)(3) analysis that "the manageability problem in the present case goes beyond individualized damages . . . . the issue is whether class-wide methods of proof exist to show that California law was actually violated." (citation modified)). *But*

*see Green v. Perry's Restaurants LTD*, No. 21–cv–0023–WJM–NRN, 2024 WL 5159138, at *10 (D. Colo. Dec. 18, 2024) (distinguishing *Ruiz* where plaintiffs "also maintained that, as a class, they were *prohibited* from taking meal and rest breaks full stop" (citing *Ruiz*, 2020 WL 5517113, at *10)). *Vasquez* and *Ordonez v. Radio Shack, Inc*. further support the Court's conclusion. *See Ordonez*, No. 2:10–cv–07060-CAS(JCGx), 2014 WL 4180958, at *6 (C.D. Cal. Aug. 15, 2014) ("The Court is therefore left without a method of establishing by common proof when rest breaks were or were not taken by members of the class.").

Thus, the Court agrees with Defendant, and the reasoning of other courts, that Plaintiffs cannot meet their *predominance* burden because "there is no common proof of liability and individualized questions predominate over any class-wide issues." ECF No. 63 at 18; *Ruiz*, 2020 WL 5517113, at *3; *Vasquez*, 2015 WL 1125643, at *9; *Lewis v. Ford Motor Co*., 263 F.R.D. 252, 268 (W.D. Pa. 2009) ("Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of questions of law and fact common to the members of the class." (citation modified)). Defendants persuasively observe that, absent any *common proof* of rest break violations that could give rise to Defendant's liability, individual questions predominate. E.g., *why* did a specific employee take—or not take—a rest break on any given day? Did an employee choose voluntarily to decline a rest break, or was one denied as the result of a supervisor's order? Were certain employees denied rest breaks during every shift, or denied rest breaks only periodically? *See id. Felix v. Staples Cont. & Com. LLC*, No. EDCV 24–1968–KK–SPx, 2025 WL 3050086, at *9 (C.D. Cal. Sept. 26, 2025) (denying

class certification as to meal break claims where "the finder of fact will need to determine in each instance whether the statutorily required opportunity for a meal break was provided and will also have to determine in each instance why the meal period was missed." (citation modified)); *Lightner v. Davita, Inc.*, No. 23–cv–03104–NYW–KAS, 2026 WL 2453335, at *6 (D. Colo. Aug. 21, 2026) (concluding in "rest-break FLSA claim" that proposed collective members were not similarly situated because "there [were] no allegations establishing *how* such an informal practice was implemented or *how often* the practice deprived employees of rest-break compensation they were owed" (emphases added)).

The parties' own evidentiary submissions confirm this difficulty, and thus why Plaintiffs have not met their *predominance* burden. *See, e.g.,* 63 at 45 (declaration from Gary Smith, a crew member employed by Defendant, stating "I generally choose not to take an unpaid off the clock meal breaks [sic]. I am allowed to eat on the clock on these days.") *See also* § 12:5 Methods of proving individual damages, 4 Newberg and Rubenstein on Class Actions § 12:5 (6th ed.) ("If a class proponent cannot demonstrate that a common method exists for determining the damages of each individual class member, the case may devolve into myriad individual determinations and fail the predominance test for class certification." (citation modified)); *Tabor*, 703 F.3d at 1230 (agreeing with district court that claim could not be "effectively resolved in a class suit" where it "involved 'highly individualized' facts" (citation modified)); *Braun v. Safeco Ins. Co. of Am.*, No. CV 13–00607 BRO PLA(x), 2014 WL 9883831, at *16 (C.D. Cal. Nov. 7, 2014) (finding plaintiffs failed to meet *predominance* burden where "[b]ecause of the

putative class members' varying experiences, the meal and rest break claims are not readily susceptible to common proof"); *Dalton v. Lee Publications, Inc.*, No. 08cv1072–GPC–NLS, 2013 WL 2181219, at *10 (S.D. Cal. May 20, 2013) (concluding plaintiffs were "unable to offer common proof to establish liability" where plaintiffs relied on "spreadsheets" that disclosed a "wide variation in the number of hours worked by" potential class members, and that "individualized determinations as to work hours will predominate at trial and there is insufficient common proof to establish liability for rest break claims"); *Vasquez*, 2020 WL 1527922, at *17. *But see* ECF No. 62 at 234; *id.* at 237 (declaration from employee Jonathan Williams that "the reason Wendy's employees missed rest breaks . . . is because the restaurant was short staffed"); *id.* at 240 (declaration from employee David Hardinger that "around November 2020, Wendy's started to try to provide 10-minute breaks, but I still *frequently* did not receive the 10-minute breaks." (emphasis added)).

At bottom, timekeeping records—against the factual background of *this case*—alone are insufficient to establish *predominance. Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 217 (E.D. Cal. 2015), *order clarified sub nom. Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13–cv–01282–KJM–AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), *and aff'd*, 690 F. App'x 526 (9th Cir. 2017) ("The records do not speak to rest breaks. In the absence of a policy requiring rest and meal breaks be shorter than the required lengths, however, timekeeping records alone do not present a common issue, or its predominance, here." (citation modified)). Simply stated, they do not provide "common proof" from which the Court may determine Defendant's liability without the need to resort

to individualized inquiries into each putative class member's circumstances. *Tyson Foods*, 577 U.S. at 453.

Plaintiffs try working around these predominating individual issues by arguing that "statistical sampling [can] overcome the lack of records." ECF No. 64 at 8; ECF No. 62 at 13 (arguing that "Defendant's detailed time-keeping records *along with representative evidence* can be used to quantify missed breaks." (emphasis added)). Notably, Plaintiffs have not put forward representative or statistical evidence in seeking class certification. *See, e.g., Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023) (observing plaintiffs bear the burden of proof to satisfy Rule 23's requirements). *Cf.* ECF No. 62 at 16.

Regardless, Plaintiffs have failed to explain why using representative evidence—a generally frowned-upon method of damages calculation in the class action context—cures their *predominance* problems, or why this case presents "extraordinary circumstances" justifying using this method of proof to establish damages or liability. *Utne v. Home Depot U.S.A., Inc.*, No. 16–cv–01854–RS, 2022 WL 16857061, at *5 n.7 (N.D. Cal. Nov. 10, 2022) ("Plaintiff provides no authority that would support a classwide damages award extrapolated from a representative sample of injured class members. In fact, courts have actively disproved of this method in the absence of 'extraordinary circumstances.'" (citation modified)). And to the extent that Plaintiffs argue the Court should disregard Defendant's "faulty employment records" in its Rule 23 analysis, ECF No. 62 at 14, even assuming that Defendant's records are "faulty" is not dispositive of the Court's analysis, nor does it weigh in favor of certification. *See, e.g., Lugo v. Farmer's*

*Pride Inc.*, 737 F. Supp. 2d 291, 312 (E.D. Pa. 2010) ("Thus, even assuming that defendant's records in this case are inadequate as plaintiff claims, it remains plaintiff's burden to prove that they have not been properly compensated." (citing *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946)).

Moreover, this evidentiary deficiency—the failure of Defendant's record to establish common proof—could result in certification of a class that is composed of more than a *de minimis* number of uninjured class members. *See also* ECF No. 63 at (observing that drawing inferences as to liability from time sheets is "conjectur[al]"); *Utne*, 2022 WL 16857061, at *5 ("[A] district court cannot permissibly certify a class that potentially includes more than a *de minimis* number of uninjured class members." (citation modified)). As Plaintiffs acknowledge, Defendant's records are, on their face, "insufficient to track whether any given break occurred," ECF No. 62 at 15, and thus whether Defendant faces *liability* for a rest break violation as to any given class member. As such, based on the nature of Defendant's records, "this is a case in which *any* class member may be injured," *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (emphasis added), and determining whether an individual class member "was injured (and therefore has a claim) turns on an assessment of the individual facts concerning" that class member, *id.* at 55. *See also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012) ("If, however, a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."). The problem with Defendant's records, in other words, is about much more than calculating

*damages*, which of course would not be a basis for denying class certification. *See, e.g., Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 676 (D.N.M. 2020). *Vasquez*, 2015 WL 1125643, at *9 ("However, the manageability problem in the present case goes beyond individualized damages. Here, the issue is whether class-wide methods of proof exist to show that California law was actually violated."). Rather—and fatal to Plaintiffs' motion—such evidence concerns *liability* in addition to any class member's damages, which demands individualized proof. *See Ruiz*, 2020 WL 5517113, at *4.

* * *

For the reasons set forth above, Plaintiffs have not met their Rule 23(b)(3) *predominance* burden. Accordingly, certification is improper, and the Court need not consider the remainder of the parties' certification arguments. *See, e.g,. Ruiz*, 2020 WL 5517113 at *4 n.1; *Frederick v. S. Star Cent. Gas Pipeline, Inc.*, No. 10–1063–JAR, 2011 WL 3880902, at *4 (D. Kan. Sept. 2, 2011) (concluding that "even if plaintiffs were able to meet their burden of proving commonality, their claims would fail under the predominance inquiry of Rule 23(b)(3), which is a far more demanding standard" (citation modified)).

## II. CONCLUSION

Consistent with the above analysis, Plaintiffs' Renewed Motion for Class Certification, ECF No. 62, is DENIED.

DATED this 3rd day of September 2026.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge